**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>ITTELLA INTERNATIONAL LLC, a California limited liability company; ITTELLA'S CHEF, INC., a California limited liability company; TATTOOED CHEF, INC., a Delaware corporation; MYJOJO, INC., a Delaware corporation; NEW MEXICO FOOD DISTRIBUTORS, INC., a New Mexico corporation; KARSTEN TORTILLA FACTORY, LLC, a New Mexico limited liability company; BCI ACQUISITION, INC., a Delaware corporation; TTCF-NM HOLDINGS INC., a New Mexico corporation,<br><div align="center">Debtors.</div> | BAP No. CC-25-1032-FLS<br><br>Bk. No. 2:23-bk-14154-SK |
| PETER HURWITZ, Liquidating Trustee,<br><div align="center">Appellant,</div><br>v.<br>GRATEFUL EGG, LLC,<br><div align="center">Appellee.</div> | **MEMORANDUM**[*] |

_____

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, _see_ Fed. R. App. P. 32.1, it has no precedential value, _see_ 9th Cir. BAP Rule 8024-1.

Appeal from the United States Bankruptcy Court
for the Central District of California
Sandra R. Klein, Bankruptcy Judge, Presiding

Before: FARIS, LAFFERTY, and SPRAKER, Bankruptcy Judges.

## INTRODUCTION

Liquidating trustee Peter Hurwitz (the "Liquidating Trustee") appeals the bankruptcy court's denial of his motion for reconsideration of the court's approval of appellee Grateful Egg, LLC's administrative claim. He contends that he was denied due process because the court did not give notice of a deadline to object to the claim and that the bankruptcy court improperly considered confidential settlement communications.

We discern no abuse of discretion and AFFIRM.

## FACTS

### A.    Prepetition events

In 2021, Grateful Egg agreed to lease a cold storage facility located in Vernon, California to Ittella International LLC ("Ittella"). In lieu of a security deposit, Ittella provided a $558,120 letter of credit.

### B.    The bankruptcy cases

In July 2023, Ittella and related entities Ittella's Chef, Inc., Tattooed Chef, Inc., Myjojo, Inc., New Mexico Food Distributors, Inc., Karsten Tortilla Factory, LLC, BCI Acquisition, Inc., and TTCF-NM Holdings, Inc.

(collectively, the "Debtors") filed voluntary chapter 11[1] petitions. Those cases were ordered jointly administered.

Ittella did not assume the lease within 120 days after the petition date. Grateful Egg argued that § 365(d)(4) obligated Ittella to surrender the property to Grateful Egg. Grateful Egg also asserted that Ittella was in material default under the lease because it failed to pay rent, property taxes, and insurance; caused significant damage to the property;[2] and refused to allow Grateful Egg to repair the property during the bankruptcy. Grateful Egg filed a motion to compel Ittella to turn over the property.

Grateful Egg and the Debtors entered into a stipulation (the "Expense Allowance Stipulation") to resolve most of their dispute. The parties agreed that the lease would be deemed rejected on January 16, 2024, and the Debtors would return possession of the property to Grateful Egg and pay Grateful Egg for prorated rent. Additionally, Grateful Egg would have an allowed administrative expense claim "for all post-Petition Date amounts owed under the Lease for taxes, insurance, and equipment"

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, all "Civil Rule" references are to the Federal Rules of Civil Procedure, and all "LBR" references are to the local bankruptcy rules for the Central District of California.

[2] Grateful Egg filed a proof of claim for $800,000 due to damage Ittella allegedly caused to the cold storage facility. Grateful Egg later amended the proof of claim to increase the claim to $2,387,786.70.

through January 16, 2024. The bankruptcy court approved the Expense Allowance Stipulation on the same day.

The Debtors filed a motion to set January 19, 2024 as the deadline for creditors to file and serve requests for payment of administrative claims arising before the cutoff date of December 31, 2023. They requested that the bankruptcy court approve the following procedure:

> (a) **claimants shall not set hearings on their Admin. Claim Requests** and (b) a hearing on any Admin. Claim Request shall only be set **in the event there is a dispute** regarding the Admin. Claim Request and the Debtors and/or the Committees and the subject claimant are not able to resolve the dispute, in which case **the Debtors and/or the Committees shall set the Admin. Claim Request for hearing** on not less than fourteen (14) days' notice and provide notice thereof to the subject claimant and other parties entitled to notice of the hearing on the Admin. Claim Request[.]

(Emphases added.) The motion did not specify a deadline for objections to an administrative expense claim. The bankruptcy court granted the motion and entered an order (the "Administrative Bar Date Order") adopting the proposed deadlines and procedure.

## C.    Grateful Egg's request for payment of its administrative claim

On January 19, 2024, Grateful Egg filed its timely Request of Allowance and Payment of Administrative Claims (the "Request for Payment"). Pursuant to the Expense Allowance Stipulation, Grateful Egg asserted an administrative claim for property taxes, insurance premiums, and equipment rental totaling $182,065.05.

4

In compliance with the Administrative Bar Date Order, Grateful Egg did not set the Request for Payment for hearing. The Debtors made some desultory efforts to reach a settlement with Grateful Egg about the Request for Payment, but there was no agreement. The Debtors and the creditors' committees did not file any objections to the Request for Payment or request a hearing.

In the meantime, the Debtors proposed a joint chapter 11 plan that called for the creation of a liquidating trust overseen by a liquidating trustee. The bankruptcy court approved the plan and disclosure statement on May 9, 2024. Mr. Hurwitz was appointed Liquidating Trustee. He did not file an objection to or request a hearing on the Request for Payment.

On November 12, 2024, the bankruptcy court entered its Order Granting Application of Grateful Egg, LLC for Allowance and Payment of Administrative Expense Claim (the "Administrative Claim Order").[3] It approved the Request for Payment in the full amount of $182,065.05 and authorized the Liquidating Trustee to pay Grateful Egg that amount.

## D.   The Liquidating Trustee's motion for reconsideration

Twenty days later, on December 2, 2024, the Liquidating Trustee filed a motion (the "Motion for Reconsideration") asking the bankruptcy court to reconsider the Administrative Claim Order under Civil Rule 60(b).[4] He

---

[3] The record is silent, but at oral argument, Grateful Egg's counsel represented that Grateful Egg lodged a proposed order a few days prior to entry of that order.

[4] Inexplicably, the Liquidating Trustee failed to apprise this Panel that he initially

5

argued that Grateful Egg did not provide him with notice of a hearing or deadline to object to the administrative claim. He said that the Expense Allowance Stipulation preserved all defenses to the administrative claim and that § 503(b) requires notice and a hearing before the bankruptcy court can allow payment of administrative expenses. As a result, he asserted that he was denied due process.

The Liquidating Trustee also argued that the bankruptcy court should vacate the Administrative Claim Order because Grateful Egg did not apply the amount of the letter of credit to its administrative claim.

Grateful Egg opposed the Motion for Reconsideration. It argued that the Debtors' counsel received notice of the Request for Payment and chose not to object. It also contended that the Liquidating Trustee should have known about the letter of credit, as it was attached to the lease agreement. In support of this assertion, it attached e-mail correspondence between Grateful Egg and the Debtors in which the Debtors' counsel attempted to negotiate a resolution of the Request for Payment. Grateful Egg used these e-mails to show that the Debtors knew about the letter of credit.

The Liquidating Trustee filed a reply brief. He repeated his

filed a motion for reconsideration fourteen days after entry of the Administrative Claim Order. The bankruptcy clerk pointed out a procedural error, so the Liquidating Trustee filed a "new" motion for reconsideration the following day. The clerk advised the Liquidating Trustee that that filing was also deficient. The Liquidating Trustee then filed the subject Motion for Reconsideration on December 2, which was twenty days after entry of the Administrative Claim Order.

argument that there was no deadline to object to the Request for Payment or to request a hearing. He argued that the majority of the claim was not entitled to priority because those expenses arose after the Debtors vacated the property and rejected the lease.[5] He also complained that Grateful Egg would obtain a "windfall" by receiving payment on both the administrative claim and the letter of credit.

The Liquidating Trustee argued that it was improper for Grateful Egg to disclose privileged settlement communications under Rule 408 of the Federal Rules of Evidence ("FRE"). He claimed that the discussions were irrelevant because they did not support the validity of the administrative claim.

Finally, the Liquidating Trustee argued that the Request for Payment did not comply with the Administrative Bar Date Order and in any event should have been set for hearing.

The bankruptcy court held a hearing on the Motion for Reconsideration. The court pointed out that Grateful Egg served the Debtors' counsel with notice of the administrative claim. It asked whether the Liquidating Trustee believed additional service on the Liquidating Trustee was necessary. The Liquidating Trustee acknowledged that the Debtors were served with the Request for Payment but explained that he

---

[5] The Liquidating Trustee argued that the insurance policy premiums covered a full year and that the administrative claim should include only a prorated portion of the total premium, reflecting that the Debtors occupied the property for only three-and-a-half months after the petition date.

7

was complaining about the lack of a deadline to object, not necessarily the lack of service.

The bankruptcy court orally announced its ruling denying the Motion for Reconsideration under Civil Rule 60(b)(1). It rejected the Liquidating Trustee's argument that he did not have proper notice of the Request for Payment. It first found that it was beyond dispute that the Debtors' counsel had notice of the Expense Allowance Stipulation and the Request for Payment. The bankruptcy court recognized that the Liquidating Trustee was appointed after the Administrative Bar Date Order and the Request for Payment were filed, but it held that the Liquidating Trustee did not provide any authority that Grateful Egg needed to provide him with additional notice.

The court also rejected the Liquidating Trustee's argument that Grateful Egg did not provide notice of a hearing or objection deadline, noting that "the express[ ] provisions of the bar date order indicated that it was not Grateful [Egg]'s responsibility to set the matter for hearing, but instead, it was the debtor's and/or the committees['] responsibility to do so."

The bankruptcy court declined to consider the Liquidating Trustee's arguments regarding the letter of credit, the insurance premiums, or the settlement discussions, as they were new arguments not properly the subject of a Civil Rule 60(b) motion.

The bankruptcy court entered an order denying the Motion for

Reconsideration for the reasons stated on the record. The Liquidating Trustee timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A), (B). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in denying the Liquidating Trustee's Motion for Reconsideration.

## STANDARD OF REVIEW

We review for an abuse of discretion the bankruptcy court's denial of a motion for reconsideration. *First Ave. W. Bldg., LLC v. James (In re Onecast Media, Inc.)*, 439 F.3d 558, 561 (9th Cir. 2006).

To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, we consider whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc).

## DISCUSSION

**A.** **The Liquidating Trustee assigns the wrong legal standard to his Motion for Reconsideration.**

The parties disagree about the legal standard that the bankruptcy

9

court should have applied to the Motion for Reconsideration. Grateful Egg takes the position that the bankruptcy court properly reviewed it under Civil Rule 60(b) (which was the stated basis for the Motion for Reconsideration) and faults the Liquidating Trustee for failing to address the court's ruling under that legal standard. Conversely, although the Liquidating Trustee had only sought relief under Civil Rule 60(b), he now argues for the first time in his reply brief on appeal that the bankruptcy court should have analyzed the Motion for Reconsideration under Civil Rule 59. We are unpersuaded by the Liquidating Trustee's argument.

The Liquidating Trustee never argued in the bankruptcy court that the Civil Rule 59 standard applies. Instead, the Motion for Reconsideration rested solely on Civil Rule 60(b): "The relief requested herein is predicated on FRCP 60(b)." He also does not argue in his opening brief that the bankruptcy court erred when it applied Civil Rule 60(b) (rather than Civil Rule 59(e)). Therefore, he has waived any argument that we should consider the standard of Civil Rule 59. *See Padgett v. Wright*, 587 F.3d 983, 985 n.2 (9th Cir. 2009) (stating that the court ordinarily will not consider issues raised for the first time on appeal); *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[O]n appeal, arguments not raised by a party in its opening brief are deemed waived.").[6]

---

[6] The Liquidating Trustee's Civil Rule 59 argument (raised only in his reply brief on appeal) rests on the assertion that his Motion for Reconsideration filed fifteen days after the Administrative Claim Order is timely under Civil Rule 59. He is wrong. He disregards the fact that Rule 9023 makes Civil Rule 59 applicable in bankruptcy court

Civil Rule 60, made applicable in bankruptcy proceedings by Rule 9024, provides that the movant must show entitlement to one of the specified grounds for relief in Civil Rule 60(b):

(1) mistake, inadverience, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under [Civil] Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Civil Rule 60(b).

The Liquidating Trustee's decision to seek relief under Civil Rule 60(b) (rather than Civil Rule 59) has a crucial implication: the legal

but changes the deadline to fourteen days.

Curiously, the bankruptcy court's docket sheet reveals that the Liquidating Trustee did file a motion for reconsideration on the fourteenth day after the bankruptcy court entered its order. *See Wolverine Endeavors VIII, LLC v. E. W. Bank (In re King)*, 664 B.R. 356, 361 n.2 (9th Cir. BAP 2024) (This Panel may take "judicial notice of the bankruptcy court docket and various documents filed through the electronic docketing system."). We fail to understand why the Liquidating Trustee did not bring this earlier motion to the attention of the bankruptcy judge, let alone mention it in any of his appellate briefs. But it is irrelevant because, although the Liquidating Trustee might have been able to rely on the substantive standard of Civil Rule 59, his arguments rest entirely on Civil Rule 60, and thus he has waived any argument based on Civil Rule 59.

standard and standard of review is much less favorable to the Liquidating Trustee. Under Civil Rule 60(b), the Liquidating Trustee "is not permitted to revisit the merits of the underlying judgment or argue that the trial court committed some legal error in arriving at that judgment." *United Student Funds, Inc. v. Wylie (In re Wylie)*, 349 B.R. 204, 209 (9th Cir. BAP 2006). We review the Liquidating Trustee's arguments "solely as they bear on the [bankruptcy court's] exercise of discretion on the [Civil] Rule 60(b) motion. [Appellant] cannot prevail merely by showing that the [underlying judgment] . . . was erroneous." *SEC v. Seaboard Corp.*, 666 F.2d 414, 415-16 (9th Cir. 1982); *see also* 11 Fed. Prac. & Proc. Civ. § 2858 (3d ed.) ("[R]elief will not be granted under [Civil] Rule 60(b)(1) merely because a party is unhappy with the judgment. The party must make some showing justifying the failure to avoid the mistake or inadvertence."). Rather, the Liquidating Trustee must seek relief under "the narrow grounds enumerated in [Civil Rule] 60(b). These grounds generally require a showing that events subsequent to the entry of the judgment make its enforcement unfair or inappropriate, or that the party was deprived of a fair opportunity to appear and be heard in connection with the underlying dispute." *In re Wylie*, 349 B.R. at 209 (citation omitted).

The court correctly analyzed the Motion for Reconsideration under Civil Rule 60(b)(1). The Liquidating Trustee argues briefly that the Administrative Claim Order should be set aside for "surprise (FRCP 60(b)(1)[)], misrepresentation and misconduct (FRCP 60(b)(3)[)] and . . .

because the [Administrative Claim Order] was entered without any notice, it should be vacated as a mistake." For the reasons explained below, we reject each of these arguments.[7]

## B.     The Liquidating Trustee's alleged lack of notice or opportunity to object did not warrant reconsideration.

The Liquidating Trustee argues that Grateful Egg failed to provide the Debtors and the Liquidating Trustee with required notice of its Request for Payment, hearing, and proposed order, which deprived the Liquidating Trustee of an opportunity to respond to and contest the Request for Payment. We disagree.

Section 503(b) provides in part that, "[a]fter notice and a hearing, there shall be allowed administrative expenses . . . ." Section 102(1) specifies that the phrase "after notice and a hearing" does not always require notice or a hearing; rather, it "means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but . . . authorizes

---

[7] We would reach the same conclusion herein even if we were to analyze the Motion for Reconsideration under Civil Rule 60(b)(6), which allows a trial court to set aside an order for "any other reason that justifies relief." For the reasons stated herein, the Liquidating Trustee offers no reason that would justify relief from the Administrative Claim Order. Additionally, relief from a judgment or order should be granted "sparingly as an equitable remedy to prevent manifest injustice, and only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment." *In re Wylie*, 349 B.R. at 212 (cleaned up). The Liquidating Trustee has failed to argue or present any extraordinary circumstances justifying the requested relief.

an act without an actual hearing if such notice is given properly and if . . . such a hearing is not requested timely by a party in interest[.]" We have stated that "the concept of notice and a hearing is flexible and depends on what is appropriate in the particular circumstance." *Tennant v. Rojas (In re Tennant)*, 318 B.R. 860, 870 (9th Cir. BAP 2004). However, we have also acknowledged that the "flexible" notice and hearing requirement does not allow a bankruptcy court to steamroll over a party's due process rights. *Id.* at 871.

In this case, the bankruptcy court's Administrative Bar Date Order defined the notice and opportunity for a hearing that were appropriate for administrative claims in the circumstances of this case. The bankruptcy court found that Grateful Egg fully complied. Grateful Egg filed its Request for Payment within the deadline set by the Administrative Bar Date Order. It properly served its Request for Payment on the Debtors' counsel, and the Liquidating Trustee conceded in the bankruptcy court that he was not entitled to service of the Request for Payment. Grateful Egg did not set the matter for hearing because the Administrative Bar Date Order prohibited it from doing so. The Debtors and the creditors' committees, who were the only parties entitled to object or request a hearing, did nothing. In short, Grateful Egg did everything the Administrative Bar Date Order permitted and required.

In contrast, the Liquidating Trustee could have avoided the predicament in which he finds himself. He could have reviewed the

14

bankruptcy court's docket sheet for filed requests for payment of administrative expenses and promptly requested hearings on any that appeared questionable. Instead, he did nothing for six months after his appointment. He did not take any steps to challenge Grateful Egg's claim until after the bankruptcy court entered its order. We cannot say that the bankruptcy court failed "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections[,]" *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950), when it approved the Request for Payment.

The Liquidating Trustee tries to avoid the consequences of his own inaction by arguing that it was the lack of notice of lodgment of the proposed order[8] or of a deadline to object (rather than a lack of notice of

---

[8] The Central District of California employs a Lodged Order Upload – or "LOU" – system that allows users to upload proposed orders electronically. The rules and guidelines that govern the LOU system specify that a party lodging a proposed order need not serve that order on a party that did not object to the request for relief. Section 1.2(b)(4) of the LOU supplement to The Central Guide provides:

> [A] proposed order must be served only upon any person, entity, or attorney who filed an opposition to the moving papers, or who was required to sign approval of a stipulation that resolved the motion or other request for relief. **There is no obligation to serve the proposed order on any other person or entity . . . .**

*See also* LBR 9021-1(b)(4) ("[I]f no opposition was filed, no service or proof of service of the proposed order is required prior to lodging of the proposed order . . . ."); The Central Guide section 2-16 ("A proposed order or judgment must be served on other parties only when parties filed an opposition to the motion or other request . . . . If these conditions do not exist, . . . there is no reason to serve the proposed order before lodging it with the court."). Thus, because no one objected to the Request for Payment, the local bankruptcy rules and guidelines did not require Grateful Egg to serve the

the Request for Payment) that deprived him of due process. But the Administrative Bar Date Order imposed no such notice requirements. Grateful Egg timely filed its Request for Payment and gave notice to the Debtors. Under the Administrative Bar Date Order's procedures (that the Debtors had proposed), this put the onus on the Debtors and the committee (and the Liquidating Trustee, standing in the Debtors' shoes) to challenge the Request for Payment. But the Liquidating Trustee did not act, even though he had six months to do so. He was not entitled to an open-ended period to object, and the bankruptcy court must have implicitly been satisfied that he had a reasonable opportunity to object to the Request for Payment.[9] *See Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) ("Due process is flexible and calls for such procedural protections as the particular situation demands." (cleaned up)).

---

proposed order on the Liquidating Trustee.

Additionally, the purpose of the LOU service requirement is to give parties an opportunity to comment on whether the proposed order accurately reflects the court's ruling, not to give parties another opportunity to object to the underlying motion.

[9] The Debtors suggested in their motion requesting an administrative bar date order that they would quickly raise any objections to administrative claim requests. The motion explained that the bar date would "allow the Debtors and/or the Committees to ascertain the amount of administrative claims that need to be treated under a plan or plans, which are expected to be filed by no later than January 29, 2024 (i.e., just 10 days after the proposed January 19, 2024 Admin. Claim Bar Date . . . )" so they could "formulat[e] a plan . . . with information that is as accurate as possible regarding administrative claims . . . ." This stated intent flies in the face of the Liquidating Trustee's position that the lack of a deadline to object afforded him an unlimited amount of time to object to an administrative claim.

We acknowledge, with the benefit of hindsight, that the Administrative Bar Date Order probably should have expressly stated a deadline to object to administrative claims. But the question is not whether that order was perfect. Rather, the question is whether, in the absence of a specific deadline, the Liquidating Trustee had a due process right to an unlimited amount of time to file an objection. We hold that, because the Liquidating Trustee had notice of Grateful Egg's Request for Payment and an ample time in which to object, there was no denial of due process.

## C. The settlement correspondence was not inadmissible under FRE 408.

The Liquidating Trustee next argues that the bankruptcy court erroneously relied on confidential settlement communications offered by Grateful Egg that purported to show that the Debtors' counsel was aware of the Request for Payment. He contends that the correspondence was inadmissible under FRE 408. Moreover, he claims that the correspondence only shows that the Debtors were aware of the administrative claim, not the Request for Payment. He also claims that the correspondence does not establish that the Liquidating Trustee had any knowledge of the Request for Payment.

We again reject all of the Liquidating Trustee's arguments. First, the bankruptcy court did not err in considering the correspondence. FRE 408 only bars evidence used "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement

17

or a contradiction[.]" Fed. R. Evid. 408(a). But courts can consider settlement communications "for a purpose other than establishing liability. Courts have admitted evidence of offers or agreements to compromise . . . to show the defendant's knowledge . . . ." *Bankcard Am., Inc. v. Universal Bancard Sys., Inc.*, 203 F.3d 477, 484 (7th Cir. 2000) (citations omitted); *see also* Fed. R. Evid. 408 advisory committee's note to 2006 amendment ("[FRE] 408 [is] inapplicable when compromise evidence is offered for a purpose other than to prove the validity, invalidity, or amount of a disputed claim. . . . The amendment does not affect the case law providing that Rule 408 is inapplicable when evidence of the compromise is offered to prove notice."). Here, the Debtors' counsel's statements were not offered to prove the liability on or amount of the administrative claim but to prove notice via the Debtors' knowledge of the existence of the Request for Payment. Thus, the correspondence falls outside of the ambit of FRE 408.

Second, we reject the Liquidating Trustee's contention that the e-mail does not show that the Debtors were aware of the administrative claim. Within days after Grateful Egg filed the Request for Payment, counsel for the Debtors e-mailed Grateful Egg's counsel at least twice and specifically referenced the administrative claim and the letter of credit. Counsel included a summary of charges that appears to have been taken directly from an exhibit to the Request for Payment. Thus, the correspondence supports Grateful Egg's position that the Debtors had notice of the Request for Payment (and of the letter of credit).

Third, although the Liquidating Trustee faults Grateful Egg for failing to communicate with or provide notice to the Liquidating Trustee "related to the Motion for Allowance and Payment" (i.e., the Request for Payment), he conceded in the bankruptcy court that Grateful Egg was not required to provide "additional service" on him. The Liquidating Trustee has apparently changed his position on appeal, but he fails to offer any authority to support this argument.

**D. The bankruptcy court did not err in refusing to consider the letter of credit and other arguments concerning the underlying merits.**

Finally, the Liquidating Trustee argues that the Administrative Claim Order results in an inequitable "windfall" for Grateful Egg. He contends that the entirety of the administrative claim was not entitled to administrative expense priority and that the letter of credit should have been applied to reduce the administrative claim.

As the bankruptcy court correctly pointed out, these arguments were not appropriate on a Civil Rule 60(b) motion. The Liquidating Trustee was "not permitted to revisit the merits of the underlying judgment or argue that the trial court committed some legal error in arriving at that judgment." *In re Wylie*, 349 B.R. at 209.

The Liquidating Trustee admitted that he would have raised these arguments as an objection to the Request for Payment. We agree that that would have been the proper time to make those arguments. Although there was no stated deadline to object to the Request for Payment, the Request

19

for Payment was in the court's file, and the Administrative Bar Date Order established the procedure for asserting and objecting to it. But the Liquidating Trustee sat on his hands and did not object. This does not indicate mistake, inadvertence, surprise, excusable neglect, misrepresentation, or misconduct. Civil Rule 60(b)(1), (3). We therefore do not review the Liquidating Trustee's arguments concerning the merits of the Request for Payment in this appeal from the Motion for Reconsideration. *See In re Wylie*, 349 B.R. at 210 ("[T]he merits of the claim objection are no longer fair game unless the claimant first establishes a good excuse, cognizable under FRCP 60(b), for its failure to timely contest the objection.").[10]

---

[10] The analysis would have been different if the Liquidating Trustee had sought relief under Civil Rule 59(e), but the result would likely have been the same. "Amendment or alteration is appropriate under Rule 59(e) if . . . the district court committed clear error or made an initial decision that was manifestly unjust . . . ." *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001). Under that more permissive standard, a movant under Civil Rule 59(e) "may seek a reconsideration of the correctness and merits of the trial court's underlying judgment." *In re Wylie*, 349 B.R. at 209. But even if the bankruptcy court had reached the merits under Civil Rule 59, we would affirm.

The Liquidating Trustee argues that the bankruptcy court should have applied the letter of credit to Grateful Egg's administrative claim, rather than to its prepetition unsecured claim. But neither the lease, nor the Bankruptcy Code, nor any case law provides that, when a landlord has both a prepetition claim and an administrative claim, the landlord must apply a letter of credit backstopping the debtor/lessee's obligations to the administrative claim rather than the prepetition claim.

The Liquidating Trustee also argues that the premium for an annual insurance policy that Grateful Egg paid before Ittella rejected the lease should have been prorated. But the Liquidating Trustee ignores the fact that Grateful Egg actually paid the full premium during the pre-rejection period, and he offers no evidence that Grateful Egg

## CONCLUSION

The bankruptcy court did not abuse its discretion when it denied the Liquidating Trustee's Motion for Reconsideration. We AFFIRM.

---

was entitled or able to obtain a refund of the premium for the post-rejection period, or that Grateful Egg would have purchased the same insurance at the same price after the lease was terminated.